UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDGAR MALDONADO, Plaintiff, | |
| -against- | **INITIAL REVIEW ORDER PURSUANT TO 28 USC § 1915A** |
| JEROME FFRENCH, *et al*, Defendants. | 3:26-CV-01417 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Edgar Maldonado is a sentenced prisoner housed at Cheshire Correctional Institution ("Cheshire").[1] He filed a Complaint *pro se* and *in forma pauperis* alleging that prison officials at MacDougall-Walker Correctional Institution ("MacDougall") violated his rights under the Constitution and state law. For reasons that follow, Plaintiff may pursue damages from Officers Olivieri and Loos on his Eighth Amendment excessive force claims and may pursue damages from Lieutenants Cheney and Cieboter on his Eighth Amendment failure to intervene claims. Plaintiff may also pursue his state law claims. All other claims are dismissed, and all other defendants are terminated.

## I. FACTUAL BACKGROUND

While the Court does not set forth all the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its rulings below.

[1] *See* Department of Correction ("DOC"), *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=408147 (last visited October 29, 2026) (showing that Plaintiff was sentenced in 2023 and currently resides at Cheshire). The Court may take judicial notice of content on this website. *See*, *e.g.*, *Taveras v. Semple*, No. 3:15CV00531 (SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of content on DOC offender information search website).

Plaintiff alleges that, on December 5, 2024, prison staff were escorting Plaintiff between blocks at the MacDougall complex.[2] During the escort, Plaintiff complained to correctional officers that his restraints were too tight around his ankles and asked lieutenants if they could loosen the restraints.[3] Plaintiff informed Lieutenant Cieboter and other correctional officers that the restraints prevented Plaintiff from walking quickly.[4] Before entering the block to which Plaintiff was destined, Officers Olivieri and Loos "lifted" Plaintiff "in the air" and "shoved" Plaintiff against the "station wall."[5] Plaintiff's face hit the wall and he briefly lost consciousness.[6]

As Officers Olivieri and Loos brought Plaintiff up a set of stairs, Plaintiff said, "[Y]'all all set[,] that's use of force."[7] When Plaintiff reached his cell, an "unknown guard" told Plaintiff, "Who all set now[?] [T]here's no cameras in here."[8] The unknown guard then delivered three punches to Plaintiff's face.[9] Lieutenant Cheney applied "hard" pressure on Plaintiff's left wrist as other officers removed Plaintiff's ankle restraints.[10] The officers then exited Plaintiff's cell and removed his handcuffs through the door.[11]

---

[2] Compl., ECF No. 1-1 ¶ 1. The paragraph numbers referenced throughout this order correspond to the paragraphs listed in Plaintiff's narrative beginning on page twenty-seven of his Complaint. *See id.* at 27.
[3] *Id.*
[4] *Id.* ¶ 2.
[5] *Id.*
[6] *See id.* ¶ 3.
[7] *Id.* ¶ 4.
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶¶ 4–5.
[11] *Id.* ¶ 5.

Plaintiff attempted to show his injuries to an unknown lieutenant later that night.[12] Plaintiff told the lieutenant that correctional officers assaulted Plaintiff.[13] Plaintiff asked the lieutenant if he could report the assault to the State Troopers.[14] The lieutenant told Plaintiff that he would follow up with a report and then walked away.[15]

The following morning, Plaintiff asked Counselor Spence if Plaintiff could make a report with the State Troopers on the "blue phone" and if he could see medical staff for his injuries.[16] Counselor Spence denied both requests, telling Plaintiff that he would "let the block officers know."[17] During Counselor Spence's subsequent tour of the block, Plaintiff asked if Counselor Spence could call medical staff for pain medication and could use the blue phone to report the assault.[18] Counselor Spence told Plaintiff that he could use the phone, but Officer Gross told Plaintiff that he was "not going to do that for [Plaintiff] right now."[19] Officer Gross, along with Officer Hartesin and other correctional officers, then made jokes about "the assault on [Plaintiff]."[20]

Later that morning, Plaintiff began holding onto the "door slot trap."[21] Lieutenants Briatico and Frank, among others, arrived to tell Plaintiff to take his arm out of the door slot trap.[22] Plaintiff asked to see medical staff and for officers to take pictures of his face.[23]

---

12 *Id.*
13 *Id.* ¶ 6.
14 *Id.*
15 *Id.*
16 *Id.* ¶¶ 6–7.
17 *Id.* ¶ 7.
18 *Id.* ¶¶ 7–8.
19 *Id.* ¶ 8.
20 *Id.*
21 *Id.*
22 *Id.* ¶ 9.
23 *Id.* ¶¶ 9–10.

Lieutenant Briatico directed officers to bring him a video camera.[24] Lieutenant Briatico threatened to spray Plaintiff with pepper spray if Plaintiff did not take his arm out of the door slot trap.[25] Plaintiff then removed his arm from the door slot trap.[26]

The correctional officers ordered Plaintiff to get down on the ground.[27] Plaintiff complied with their orders, lying face-down on the ground.[28] Officers opened Plaintiff's cell, placed restraints on Plaintiff's ankles, and then brought Plaintiff to his feet.[29] Lieutenant Briatico took a picture of the swelling on Plaintiff's face.[30] Correctional officers then escorted Plaintiff to segregation and placed in-cell restraints upon him.[31]

Once in a segregation cell, Plaintiff began covering his cell window with a mattress.[32] An unknown lieutenant arrived with other correctional officers to tell Plaintiff to take down the mattress.[33] Plaintiff complied with this order.[34] The lieutenant and correctional officers then entered and subsequently exited the cell.[35] Plaintiff did not allow the lieutenant and correctional officers to "downgrade" Plaintiff from the in-cell restraints.[36] As a result, Plaintiff remained in in-cell restraints.[37]

---

[24] *Id.* ¶ 10.
[25] *Id.*
[26] *Id.*
[27] *Id.* ¶ 11.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* ¶ 12.
[32] *Id.* ¶ 13.
[33] *Id.*
[34] *Id.* ¶ 14.
[35] *Id.*
[36] *Id.*
[37] *Id.* ¶ 15.

Lieutenants and correctional officers later came to Plaintiff's cell to ask Plaintiff if he was "ready to get downgrade[d]" from the in-cell restraints.[38] The correctional officers removed the in-cell restraints and escorted Plaintiff to another cell.[39] Prison staff permitted Plaintiff to take a shower, and a nurse gave Plaintiff an ice pack for his face and cream to apply to the wounds on Plaintiff's ankles.[40]

Prison staff permitted Plaintiff to call the State Troopers on February 10, 2025.[41] A State Trooper later came to Plaintiff's cell to take his written statement.[42]

## II. <u>LEGAL STANDARD</u>

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[43] 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

---

[38] *Id.*
[39] *Id.* ¶ 16.
[40] *Id.* ¶ 17.
[41] *Id.* ¶ 18.
[42] *Id.*

[43] The Court limits its initial review under 28 U.S.C. § 1915A to Plaintiff's federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. If there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## III. DISCUSSION

Plaintiff seeks damages, injunctive relief, and declaratory relief from Defendants in their official and individual capacities.[44]

### A. Claims for Injunctive and Declaratory Relief

To the extent Plaintiff seeks injunctive and declaratory relief,[45] "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). Thus, because Plaintiff transferred from MacDougall to Cheshire, *see supra* note 1, his claims for injunctive and declaratory relief against Defendants (all MacDougall officials) are now moot. *See Salahuddin*, 467 F.3d at 272. Because Plaintiff's claims for injunctive and declaratory relief are now moot, they must be dismissed. *See Thompson v. Carter,* 284 F.3d 411, 415–16, 420–21 (2d Cir. 2002) (affirming district court's dismissal of claims for prospective injunctive and declaratory relief against defendants from transferor facility).

### B. Official Capacity Claims for Damages

To the extent Plaintiff asserts official capacity claims for damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of "claims for damages against all of the individual defendants in their official capacities … because these

---

[44] *See* Compl., ECF No. 1-1 at 19, 50–52.
[45] *See id.* at 50–51.

claims are barred by the Eleventh Amendment" (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985))). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

**C. Individual Capacity Claims for Damages**

To seek damages from any defendant in his or her individual capacity, Plaintiff must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991))).

"Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts[.]" *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted). This applies to supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

But before the Court considers whether any defendant directly or indirectly participated in violating Plaintiff's rights, *Provost*, 262 F.3d at 155, it must first consider the threshold question of whether Plaintiff's Complaint sufficiently alleges a violation of his rights. *See Wright*, 21 F.3d at 501 (only personal involvement in "alleged constitutional *deprivations*" is required (emphasis added) (internal quotation marks and citation omitted)); *see also Brown v.*

*Dep't of Corr.*, No. 3:16-CV-00376 (WIG), 2021 WL 124417, at *8 (D. Conn. Jan. 13, 2021) (agreeing that plaintiff's placement in administrative segregation "cannot serve to establish *any* personal involvement in a constitutional violation because no constitutional violation occurred." (emphasis original) (internal quotation marks and record citation omitted)).

Construing the complaint "liberally" and interpreting it "to raise the strongest arguments that it suggests," *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), the Court understands Plaintiff to raise (1) Eighth Amendment excessive force claims, (2) Eighth Amendment failure to intervene claims, (3) Eighth Amendment deliberate indifference to serious medical needs claims, and (4) state law claims for assault, battery, and negligence.[46] The Court discusses each constitutional claim in turn.

**i. Excessive Force Claims**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII, which includes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state a claim for the use of excessive force in

[46] In the "Introduction" section of Plaintiff's Complaint, he also references a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim. *See* ECF No. 1-1 at 18. But Plaintiff does not list such claims in the "Legal Claims" section of his Complaint. *See id.* at 42–49. Accordingly, Plaintiff's First Amendment retaliation claim and Fourteenth Amendment equal protection claim are dismissed. *See Myers v. Quiros*, No. 3:25-CV-763 (SVN), 2026 WL 145218, at *2 (D. Conn. Jan. 20, 2026) (noting that "the mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision"); *Whitnum v. Off. of the Chief State's Att'y*, No. 3:18CV01991 (JCH), 2019 WL 9364156, at *3 (D. Conn. Nov. 15, 2019), *report and recommendation adopted sub nom. Whitnum v. Off. of Chief State's Att'y*, No. 3:18-CV-1991 (JCH), 2020 WL 3978774 (D. Conn. Feb. 20, 2020), *aff'd*, 836 F. App'x 75 (2d Cir. 2021) (concluding that plaintiff failed to state First Amendment claim by "merely mention[ing] the First Amendment as part of a list of constitutional provisions, and mak[ing] no effort to assert any substantive claim").

violation of the Eighth Amendment, the plaintiff must allege facts establishing both objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000).

The objective component "focuses on the harm done" to the prisoner in light of "contemporary standards of decency," and the amount of harm "depends on the nature of the claim." *Id.* at 21 (internal quotation marks omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*per curiam*) (cleaned up) (quoting *Hudson*, 503 U.S. at 4). But the injury must be "more than *de minimis*[.]" *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994). "Courts in this Circuit have consistently held that an injury is *de minimis* when it is temporary and/or minor in severity." *Smith v. City of New York*, 04-cv-3286, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013) (collecting cases).

The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 9). Courts must consider whether "the officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of the inmate's injuries is one factor the courts may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Id.* at 7 (internal quotation marks and citation omitted). Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably

perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. (internal quotation marks and citation omitted).

Plaintiff describes three incidents that could potentially give rise to an excessive force claim: (1) officers' use of force during the escort of Plaintiff from one block to another, (2) officers' use of force once Plaintiff arrived at his new cell, and (3) officers' use of in-cell restraints.

First, Plaintiff alleges that, while officers escorted him from one block to another, Officers Olivieri and Loos "lifted" Plaintiff "in the air" and "shoved" Plaintiff against the "station wall," causing Plaintiff to hit his face against the wall and lose consciousness.[47] Because the Complaint contains no allegations that Plaintiff was resisting the officers or otherwise obstructed the officers' efforts to escort Plaintiff while in restraints, Plaintiff has sufficiently stated an Eighth Amendment excessive force claim against Officers Olivieri and Loos for purposes of initial review. *See*, *e.g.*, *Sena v. Torres*, No. 3:24-CV-00947 (SVN), 2025 WL 486684, at *3 (D. Conn. Feb. 13, 2025) (permitting excessive force claim to proceed against officers who "shoved [plaintiff] against some wooden boxes headfirst," "slammed [plaintiff] on the ground," and "sprayed him with a chemical agent after he was on the floor and handcuffed behind his back.").

Second, Plaintiff alleges that an "unknown guard" delivered three punches to Plaintiff's face after Plaintiff arrived at his new cell, and that Lieutenant Cheney applied "hard" pressure on Plaintiff's left wrist as other officers removed Plaintiff's ankle restraints while in the cell.[48] Punching an inmate in the face for seemingly no reason may constitute excessive force. *See*,

[47] *See* Compl., ECF No. 1-1 ¶¶ 2–3.
[48] Compl., ECF No. 1-1 ¶¶ 4–5.

*e.g.*, *Fraser v. Franco*, No. 3:22CV01014 (SALM), 2022 WL 4367576, at *5 (D. Conn. Sept. 21, 2022) (plaintiff stating excessive force claim against officer who "struck plaintiff in the face and head area multiple times…." (internal quotation marks and citation omitted)). But Plaintiff does not name the unknown guard as a defendant, so any claim against the unknown guard must be dismissed. *See, e.g., Inkel v. Connecticut Dep't of Child. & Fams.*, 421 F. Supp. 2d 513, 521 (D. Conn. 2006) (dismissing claims against persons "who [we]re not named as defendants….").

Plaintiff names Lieutenant Cheney as a defendant,[49] but Plaintiff has not sufficiently stated a claim for excessive force against Lieutenant Cheney. Plaintiff alleges that Lieutenant Cheney "appl[ied] pressure down hard on [Plaintiff's] left wrist when they w[ere] taking off [Plaintiff's] ankle[] restraints,"[50] but Plaintiff does not allege in his Complaint that Lieutenant's application of pressure on Plaintiff's wrist resulted in any injury. As a result, Plaintiff's excessive force claim against Cheney must also be dismissed. *See*, *e.g.*, *Holloway v. Douglas*, No. 24-CV-1172 (VDO), 2024 WL 3860070, at *3 (D. Conn. Aug. 19, 2024) (dismissing excessive force claim because plaintiff "d[id] not allege that he suffered any injury").

Lastly, Plaintiff alleges that correctional officers placed in-cell restraints on Plaintiff after placing him in a segregation cell.[51] The use of in-cell restraints may, depending on the circumstances, constitute an excessive use of force. *See*, *e.g.*, *Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *13 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim

[49] Compl., ECF No. 1-1 at 3.
[50] *Id.* ¶¶ 4–5.
[51] Compl., ECF No. 1-1 ¶ 12.

of excessive force based on the use of in-cell restraints without a legitimate safety or security basis for plaintiff's placement). But Plaintiff does not allege who placed him in in-cell restraints to establish any defendant's personal involvement in that potential violation. Accordingly, any excessive force claim based on the use of in-cell restraints must be dismissed for lack of personal involvement. *See*, *e.g.*, *Pedreira v. Pearson*, No. 3:24-CV-1875 (OAW), 2026 WL 2474685, at *4 (D. Conn. Aug. 24, 2026) (dismissing excessive force claim because plaintiff "d[id] not allege who, amongst the C.E.R.T. team, deployed chemical agent" against plaintiff).

In light of the above, Plaintiff may pursue excessive force claims against Officers Olivieri and Loos only. All other excessive force claims are dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

**ii. Failure to Intervene Claims**

"Prison officials can also be held liable under section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Huertas v. Guadarrama*, No. 3:25CV118 (SRU), 2025 WL 1868045, at *5 (D. Conn. July 7, 2025) (internal quotation marks and citation omitted). "To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene." *Deegan v. Doe #1*, No. 3:19CV1356 (MPS), 2019 WL 5964816, at *3 (D. Conn. Nov. 13, 2019) (cleaned up). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa*

*v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

The Court does not construe the Complaint as alleging that Lieutenant Cieboter used excessive force on Plaintiff in concert with Officers Olivieri and Loos as they "lifted" Plaintiff "in the air" and "shoved" Plaintiff against the "station wall."[52] But Lieutenant Cieboter was apparently present while this happened because Plaintiff had informed Lieutenant Cieboter that the restraints prevented Plaintiff from walking quickly just before Officers Olivieri and Loos used force on Plaintiff.[53] Because Lieutenant Cieboter was present when Olivieri and Loos used excessive force on Plaintiff and did nothing to stop it, Plaintiff has sufficiently stated an Eighth Amendment failure to protect claim against Lieutenant Cieboter. *See*, *e.g.*, *Rosa v. Cook*, No. 3:22-CV-703 (SALM), 2022 WL 17415061, at *7 (D. Conn. Dec. 5, 2022) (permitting failure to intervene claim to proceed against prison officials who were present when correctional officers used excessive force on inmate but did nothing to intervene).

As stated above, the Court dismissed the excessive force claim against Lieutenant Cheney because Plaintiff did not allege that Lieutenant Cheney's use of force caused Plaintiff any injury. But Lieutenant Cheney was seemingly present in Plaintiff's cell when an "unknown guard" delivered three punches to Plaintiff's face.[54] Unlike the force Lieutenant Cheney used, the excessive force used by the unknown guard resulted in non-*de minimis* injury to Plaintiff's face.[55] *See Hudson*, 503 U.S. at 10 (concluding that "the blows directed at [plaintiff], which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for

[52] Compl., ECF No. 1-1 ¶ 2.
[53] *Id.*
[54] *See* Compl., ECF No. 1-1 ¶¶ 4–5.
[55] *See id.* ¶ 5 (describing Plaintiff's swollen face).

Eighth Amendment purposes”). Because Lieutenant Cheney was present when the unknown guard delivered the punches to Plaintiff’s face and did nothing to stop it, Plaintiff has sufficiently stated an Eighth Amendment failure to protect claim against Lieutenant Cheney. *See Rosa*, 2022 WL 17415061, at *7.

As to the third potential use of force related to the use of in-cell restraints, Plaintiff does not identify any defendant as being present but failing to stop the use of in-cell restraints. Accordingly, Plaintiff may not pursue a failure to intervene claim against any defendant based on the use of in-cell restraints.

In light of the above, Plaintiff may pursue failure to intervene claims against Lieutenants Cheney and Cieboter only. All other failure to intervene claims are dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

**iii. Deliberate Indifference to Serious Medical Needs Claims**

To state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, the prisoner must allege facts satisfying two components, one objective and one subjective. *See Spavone v. New York State Dep’t of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The objective component requires the prisoner to demonstrate that the alleged deprivation of medical care was “sufficiently serious.” *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted). This objective showing, in turn, requires a court to make two inquiries. *See Salahuddin*, 467 F.3d at 279.

First, the Court must determine whether the inmate was “actually deprived of adequate medical care” by an official’s failure “to take reasonable measures in response to a sufficiently serious medical condition….” *Id.* at 279–80 (internal quotation marks and citation omitted); *see also Davila v. UConn Med. Ctr.*, 353 F. App’x 490, 492 (2d Cir. 2009) (summary order)

("At the most basic level, to establish a claim under the Eighth Amendment for deliberate indifference, the plaintiff must first demonstrate that he was 'actually deprived of adequate medical care.'" (quoting *Salahuddin*, 467 F.3d at 279)). "[P]rison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability." *Salahuddin*, 467 F.3d at 279–80 (cleaned up).

Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner." *Id.* at 280. This examination differs based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). Thus, this inquiry is necessarily contextual and fact-specific. *Id.* at 185.

If a plaintiff was completely deprived of medical care, "courts examine whether [his or her] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id*. (internal quotation marks and citation omitted).

"In considering whether a delay [in treatment] caused a risk of harm, a court may consider 'the absence of adverse medical effects or demonstrable physical injury.'" *Valdiviezo*, 752 F. App'x at 32 (brackets omitted) (quoting *Smith*, 316 F.3d at 187). If a plaintiff's medical condition was not aggravated by the delay, a plaintiff cannot satisfy the objective component. *See*, *e.g.*, *id.* (holding that district court properly dismissed plaintiff's claim based on a denial of medical care because, "[a]lthough [plaintiff] alleged that he remained in pain during the

hour-long wait, he d[id] not allege that the delay exacerbated his injuries from his initial fall"); *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012) (summary order) (delay in treatment did not satisfy objective component because "there [wa]s no evidence that [plaintiff's] conditions worsened over the hours of delay here" (citing *Smith*, 316 F.3d at 187)).

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety," which is "a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Smith*, 316 F.3d at 184 (internal quotation marks omitted) (quoting *Chance,* 143 F.3d at 702; *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*per curiam*)). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm. [.]" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

As to the first inquiry of the objective component, Plaintiff's allegations adequately suggest that he was "actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, when Counselor Spence denied Plaintiff's request to see medical staff for his injuries.[56] Thus, the Court must consider, under the second inquiry of the objective component, "whether the inadequacy in medical care is sufficiently serious[,]" *Salahuddin*, 467 F.3d at 280, by examining whether prison officials failed to provide any treatment, provided inadequate treatment, or delayed treatment. *See Smith*, 316 F.3d at 185–86.

Although it is sometimes difficult to determine whether prison officials delayed or denied treatment, *see Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("This is *not* a

[56] *See* Compl., ECF No. 1-1 ¶ 7.

case of *delayed* treatment as the dissent suggests."), courts in this district have concluded that if a defendant initially denies a plaintiff medical treatment but another medical professional eventually provides the plaintiff medical treatment, the defendant's initial denial of medical treatment constitutes a delay in treatment, rather than a denial of treatment. *See*, *e.g.*, *Burns v. Lupis*, No. 3:23-CV-23 (KAD), 2023 WL 1801704, *2, *4 (D. Conn. Feb. 7, 2023) (allegations that defendant-doctor denied a bottom bunk pass to an inmate with a torn meniscus "involve[d] a delay in treatment, as opposed to a denial of treatment" because another doctor later issued the inmate a lower bunk pass and prescribed ibuprofen for the inmate's knee).

Because Counselor Spence initially denied Plaintiff's request to see medical staff for his injuries,[57] but a nurse eventually gave Plaintiff an ice pack for his face and cream to apply to the wounds on Plaintiff's ankles,[58] the Court liberally construes the Complaint as alleging a delay in treatment, rather than a denial of treatment. *See Burns*, 2023 WL 1801704, at *4. Thus, the Court "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and citation omitted); *see also Nelson v. Sullivan*, No. 3:23-CV-878 (SVN), 2025 WL 2494272, at *6 (D. Conn. Aug. 29, 2025) (because plaintiff "received *some* treatment in the form of topical lidocaine, the Court's inquiry focuses on whether this treatment was inadequate and whether he was harmed by the delay in obtaining what he believes is adequate treatment (surgery)" (emphasis original)).

---

[57] *See* Compl., ECF No. 1-1 ¶ 7.
[58] *Id.* ¶ 17.

Here, "the challenged delay or interruption in treatment," *Salahuddin*, 467 F.3d at 280 (internal quotation marks omitted), occurred between Plaintiff's original injury and the treatment later provided by a nurse. But Plaintiff does not allege facts suggesting that his condition worsened while awaiting the treatment he eventually received. As such, Plaintiff has not alleged facts satisfying the objective component of his deliberate indifference claim. *See Valdiviezo*, 752 F. App'x at 32; *Bilal*, 494 F. App'x at 146. Accordingly, any deliberate indifference to serious medical needs claims must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

## IV. ORDERS

For the reasons set forth above, the Court enters the following orders:

(1) Plaintiff may proceed on his Eighth Amendment excessive force claims against Officers Olivieri and Loos in their individual capacities. Plaintiff may also proceed on his Eighth Amendment failure to intervene claims against Lieutenants Cheney and Cieboter in their individual capacities. And Plaintiff may proceed on his state law claims without prejudice to the right of any defendant to seek dismissal of any state law claims by way of a motion to dismiss or motion for summary judgment.

(2) All other claims are **DISMISSED** without prejudice, and all other defendants are terminated. Plaintiff is permitted to file an Amended Complaint within **30 days** of this order if he can allege facts overcoming the Court's reasons for dismissing the remaining claims. An Amended Complaint, if filed, **will completely replace the original Complaint**, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. If Plaintiff declines to file an Amended Complaint within 30 days of this

order, the Court will conclude that Plaintiff intends to proceed only on his Eighth Amendment claims against Officers Olivieri and Loos and Lieutenants Cheney and Cieboter.

(3) **The Clerk shall** verify the current work address for Defendants Olivieri, Loos, Cheney, and Cieboter with the DOC Office of Legal Affairs, mail to them at their confirmed address a waiver of service of process request packet containing the Complaint (ECF No. 1-1) and this order within **twenty-one (21) days** of this order and also shall report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants fail to return the waiver request, the Clerk's Office shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) **The Clerk shall** send a courtesy copy of the Complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) **The Clerk shall** send Plaintiff a copy of this order.

(6) Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they chose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(8) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

Hartford, Connecticut
November 6, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge